DAVID YEREMIAN & ASSOCIATES, INC.
David Yeremian (SBN 226337)
david@yeremianlaw.com
Alvin B. Lindsay (SBN 220236)
alvin@yeremianlaw.com
535 N. Brand Blvd., Suite 705
Glendale, California 91203
Telephone: (818) 230-8380
Facsimile: (818) 230-0308

DAVTYAN PROFESSIONAL LAW CORPORATION
Emil Davtyan (SBN 299363)
emil@davtyanlaw.com
5959 Topanga Canyon Blvd., Suite 130
Woodland Hills, California 91367
Telephone: (818) 875-2008
Facsimile: (818) 722-3974

Attorneys for Plaintiff DARIUS ROWSER and AMITA GUPTA
on behalf of themselves and all others similarly situated

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DARIUS ROWSER, an individual, and AMITA GUPTA, an individual, on behalf of themselves and all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>TRUNK CLUB, INC., a Delaware corporation; and DOES 1 through 10, inclusive,<br><br>Defendants. | Case No.: 2:17-cv-05064-DSF-RAO<br><br>Class and Collective Action<br><br>Assigned for All Purposes to:<br>Hon. Dale S. Fischer<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>[*Filed concurrently with Notice of Motion; Declarations of Jennifer Mills and David Yeremian; and [Proposed] Order*]<br><br>Hearing:  January 14, 2019<br>Time:      1:30 p.m.<br>Dept.:     Courtroom 7D, 1st Street<br>              Courthouse, Los Angeles, CA<br><br>Original Complaint: July 10, 2017<br>Amended Complaint:  August 17, 2017<br>Second Amended: June 26, 2017 |

# TABLE OF CONTENTS

I.    INTRODUCTION ........................................................................................ 1

II.   STATEMENT OF RELEVANT BACKGROUND FACTS ........................... 3

  A.   Procedural History ............................................................................. 3

  B.   Investigation and Mediation............................................................... 5

  C.   The Notice and Opt-Out Process ....................................................... 5

III.  LEGAL AUTHORITY FOR FINAL APPROVAL ...................................... 7

  A.   The Standard of Review...................................................................... 7

  B.   Relevant Ninth Circuit Considerations Favor Settlement Approval .............. 9

    1.   Strength of Plaintiffs' Case ......................................................... 10

    2.   The Amount Offered In Settlement .............................................. 11

    3.   Risk, Expense, Complexity, and Likely Duration of Litigation ................. 13

    4.   Risk of Maintaining a Class Action through Trial and Appeal ................... 14

    5.   Extent of Discovery Completed and Stage of the Proceedings ................... 16

    6.   Experience and Views of Counsel ................................................ 17

    7.   Presence of a Governmental Participant ....................................... 17

    8.   Reaction of the Settlement Class Members to the Settlement ..................... 18

    9.   Settlement Procedure .................................................................. 18

  C.   Approval of Attorneys' Fees, Costs, Representative Enhancements ........... 19

  D.   Final Certification for Settlement Purposes Is Appropriate........................... 21

  E.   Settlement Administration Costs Should Be Approved ............................. 21

IV.   CONCLUSION............................................................................................ 22

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' UNOPPOSED
MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

# <u>TABLE OF AUTHORITIES</u>

**<u>Cases</u>**

*Backman v. Polaroid Corp.*, 910 F.2d 10 (1st Cir. 1990) .........................................15

*Boyd v. Bechtel Corp.*, 485 F. Supp. 610 (N.D. Cal. 1979) ...........................7, 13, 17

*Churchill Village v. General Electric*, 361 F.3d 566 (9th Cir. 2004) ........................9

*Class Plaintiffs v. City of Seattle*, 955 F. 2d 1268 (9th Cir. 1992)........................3, 8

*Eisen v. Carlisle & Jacquelin*, 417 U.S. 156(1974) .................................................7

*Eisenstadt v. Centel Corp.*, 113 F.3d 738 (7th Cir. 1997)........................................14

*Ellis v. Naval Air Rework Facility*, 87 F.R.D. 15 (N.D. Cal. 1980).....................8, 17

*Fecht v. Northern Telecom Ltd. (In re Northern Telecom Ltd. Sec. Litig.)*,
    116 F. Supp. 2d 446 (S.D.N.Y. 2000)...................................................................14

*Fisher Bros. v. Cambridge-Lee Industries, Inc.*, 630 F. Supp. 482 (E.D. Pa. 1985) 17

*Grant v. Bethlehem Steel Corp.*, 823 F.2d 20 (2d Cir. 1987)....................................7

*Grunin v. International House of Pancakes*, 513 F.2d 114, 121 (8th Cir. 1975)........7

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998)....................................8, 9

*Hervey v. City of Little Rock*, 787 F.2d 1223 (8th Cir. 1986) .................................15

*In re Apple Computer Sec. Litig.*, 1991 U.S. Dist. LEXIS 15608
    (N.D. Cal. Sept. 6, 1991).......................................................................................15

*In re King Res. Co. Sec. Litig.*, 420 F. Supp. 610 (D. Colo. 1976). .........................17

*In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454 (9th Cir. 2000) ...............................8

*In re Omnivision Tech., Inc.,* 2008 WL 123936  (N.D. Cal. 2008)...........................13

*In re PaineWebber Ltd. Pships. Litig.*, 171 F.R.D. 104 (S.D.N.Y. 1997)................18

*In re Patriot Am. Hospitality, Inc. Sec. Litig.*, 2005 U.S. Dist. LEXIS 40995
    (N.D. Cal. 2005) .....................................................................................................18

*In re Veritas Software Corp. Sec. Litig.*, 2005 U.S. Dist. LEXIS 30880
    (N.D. Cal. 2005) .....................................................................................................13

*In re Warner Communications Sec. Litig.*, 618 F. Supp. 735 (S.D.N.Y 1985)...16, 18

*Lewis v. Newman*, 59 F.R.D. 525 (S.D.N.Y. 1973)..................................................10

*Linney v. Cellular Alaska Partnership*, 151 F.3d 1234 (9th Cir. 1998)....................7

*Nelson v. Bennett*, 662 F. Supp. 1324 (E.D. Cal. 1987) .............................................10

*Officers For Justice v. Civil Serv. Comm.*, 688 F.2d 615 (9th Cir. 1982)..................8

*Petrovic v. Amoco Oil Co.*, 200 F.3d 1140 (8th Cir. 1999)......................................15

*Phillips Petroleum Co. v. Shutts*, 472 U.S. 797 (1985) .............................................7

*Robbins v. Koger Props, Inc.*, 116 F.3d 1441 (11th Cir. 1997) ...............................14

*Van Bronkhorst v. Safeco Corp.*, 529 F. 2d 943 (9th Cir. 1976)................................3

*Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541 (2011)......................................3, 15

*West Virginia Chas. Pfizer & Co.*, 314 F. Supp. 710 (S.D.N.Y. 1970) ...................11

**Statutes**

(IMWL) 820 ILCS §105/4a *et seq*...........................................................................4

(IWPCA) 820 ILCS § 115/1 *et seq*.........................................................................4

Business & Professions Code § 17200 *et seq*.........................................................3

FLSA, 29 USC §§ 201 *et seq* ...................................................................................3

Labor Code § 203 .....................................................................................................3

Labor Code § 226(a) .................................................................................................3

Labor Code § 226.7 ..................................................................................................3

Labor Code § 510 .....................................................................................................3

Labor Code § 2699, *et seq.* ......................................................................................3

Labor Code § 2802 ...................................................................................................3

**Rules**

Fed. R. Civ. P. 23(e) .........................................................................5, 7, 8, 9, 15, 21

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' UNOPPOSED
MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.   INTRODUCTION

Plaintiffs DARIUS ROWSER and AMITA GUPTA ("Plaintiffs"), on behalf of themselves and the putative Settlement Classes of similarly situated employees of Defendant Trunk Club, Inc. ("Defendant"), respectfully request entry of an Order granting final approval of the parties' Stipulation of Settlement ("Settlement Agreement"). The parties' Settlement Agreement is addressed in the Declaration of David Yeremian in support of this Motion ("Yeremian Decl."), at ¶ 3, with copies having already been provided in connection with counsel's Declarations in support of the motion for preliminary approval (ECF No. 32-2, Exhibit A) and the motion for fees and costs (ECF No. 40-2, Exhibit A).

The Court granted preliminary approval of the Settlement on **August 24, 2018** (ECF No. 38), and the notice portion of the Settlement administration has progressed successfully through completion on **December 10, 2018**. On **November 26, 2018**, Plaintiffs filed an unopposed motion requesting award of the fees and costs incurred by Plaintiffs' counsel, and the award of the class representative incentive enhancement awards to Plaintiffs. Following completion of the notice period, Plaintiffs now seek final approval of the settlement and an award to Rust Consulting of $25,000.00 for the Settlement Administration costs and fees it has incurred to date. (See Declaration of Jennifer Mills of Rust Consulting in support of Motion for Final Approval ("Mills Decl."), ¶ 25). Defendant does not oppose the Motions or the requested awards.

Plaintiffs now ask the Court to grant final approval of the Settlement, award the requested fees, costs, and enhancements, and order payment to the Class Members pursuant to the Settlement. As explained in further detail below, the Court should grant final approval because:

- The Settlement is fair, reasonable, and adequate.
- Plaintiffs and Class Counsel have negotiated a Total Settlement Amount of

1

one million, seven hundred and fifty thousand dollars ($1,750,000.00) for approximately 3,324 employee Class and Collective members in connection with this non-reversionary Settlement. (Mills Decl., ¶¶ 20-22)

- Not a single Class member has objected to the settlement, and only one (1) Illinois Class Member opted out. (Mills Decl., ¶¶ 13-15).

- As a result of the claims administration, 3,324 Settlement Class Members (i.e. 99.95% of the Settlement Class), will receive a monetary payment from the Settlement. There are 344 California Class Members, 1,978 Illinois Class Members and 1,012 FLSA Class Members. (Mills Decl., ¶ 22).

- The average Settlement Payment for California Class Members is estimated to be $886.98, while the lowest estimated payment is $2.07 and the highest estimated payment is $4,489.65. (Mills Decl., ¶ 23).

- The average Settlement Payment for the FLSA/Illinois Class Members is estimated to be $265.60, while the lowest estimated payment is $0.49 and the highest estimated payment is $2,014.98. (Mills Decl., ¶ 24). By resolving this matter now, these class members will receive a guaranteed recovery without risk of nonpayment, delay, or an adverse judgment at trial.

- From the total estimated liability exposure Class Counsel calculated for all claims of **$3,838,530.63**, the total Net Distribution Fund to be paid to the California Class Members, Illinois Class Members and FLSA Collective Members is approximately **30.67%** of the potential liability exposure Defendant faced on the majority of Plaintiffs' claims. (Yeremian Decl., ¶ 20). These numbers are undoubtedly within the range of similar settlements for which final approval was granted. By resolving this matter now, these class members will receive guaranteed recovery without risk of nonpayment, delay, or an adverse judgment at trial. The Settlement should receive final approval because it is fair, reasonable and adequate, as it appropriately accounts for the risks, challenges, and costs to both sides were the case to proceed. It factors in the risk that

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' UNOPPOSED
MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

certification and certain defenses may succeed or fail in light of the United States Supreme Court's decision in *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011). It sets a settlement amount that reflects a compromise between two strongly held positions. The Settlement also accounts for the exchange of information in discovery. Also supporting approval is the recognition in the law favoring settlement in class actions and other complex cases where substantial resources can be conserved by avoiding the time, cost, and rigors of formal litigation. *See* 4 Newberg on Class Action 4th (4th ed. 2002); *Class Plaintiffs v. City of Seattle*, 955 F. 2d 1268, 1276 (9th Cir. 1992); *Van Bronkhorst v. Safeco Corp.*, 529 F. 2d 943, 950 (9th Cir. 1976). For these and other reasons set forth below, Plaintiffs respectfully request that the Court grant final approval of the parties' class action Settlement.

## II.   STATEMENT OF RELEVANT BACKGROUND FACTS

### A.   Procedural History

Plaintiffs were employed by Defendant as stylists providing personalized services to Defendant's customers in connection with its product lines of clothing and apparel, with Mr. Rowser in California and Ms. Gupta in Illinois. Plaintiff Rowser filed this action on **July 10, 2017**, directly in federal court, alleging the following ten class, collective, and representative claims against Defendant: (1) failure to pay wages under the FLSA, 29 USC §§ 201 *et seq.*; (2) failure to pay minimum wages; (3) failure to pay wages and overtime under the California Labor Code § 510; (4) meal period liability under California Labor Code § 226.7; (5) rest break liability under California Labor Code § 226.7; (6) failure to reimburse necessary business expenses under California Labor Code § 2802; (7) waiting time penalties for violation of California Labor Code § 203; (8) violation of California Labor Code § 226(a) for inaccurate wage statements; (9) violation of California Business & Professions Code § 17200 *et seq.*; and (10) penalties pursuant to California Labor Code § 2699, *et seq.* ("PAGA"). The complaint followed

3

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' UNOPPOSED
MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

Plaintiff's PAGA notice letter submitted to the LWDA on **June 13, 2017**. (Yeremian Decl., ¶ 7).

On **October 30, 2017**, the Court issued an order to show cause regarding the adequacy of Plaintiff's counsel (ECF No. 14), to which Plaintiff's counsel responded on **November 22, 2017** (ECF No. 16). Counsel submits this process has sufficiently vetted Class counsel's adequacy, and paves the path to the requested approval of Plaintiffs' attorneys' fees and costs. (Yeremian Decl., ¶ 8).

On **June 26, 2018**, the Court granted the parties' Stipulation (ECF No. 30), and Plaintiffs filed the Second Amended Complaint that day (ECF No. 31), adding Ms. Gupta as a named Plaintiff and as the representative for the Illinois Class Members and adding an eleventh and twelfth cause of action for: (11) violation of Illinois Wage Payment and Collection Act (IWPCA) 820 ILCS § 115/1 *et seq*.; and (12) violation of Illinois Minimum Wage Law (IMWL) 820 ILCS §105/4a *et seq*. (Yeremian Decl., ¶ 12).

The parties finalized their Settlement Agreement, and Plaintiffs filed their Motion for Preliminary Approval on **July 12, 2018**. (ECF Nos. 32 *et seq.*). Defendant filed its Notice of Non-Opposition to the Motion on **August 10, 2018** (ECF No. 33), and the Court conducted its hearing on the Motion on **August 13, 2018**. (ECF No. 34). Plaintiffs' counsel then submitted a Supplemental Declaration, including an amended Notice addressing the Court's required revisions on **August 21, 2018** (ECF No. 37 *et seq.*). On **August 24, 2018**, the Court issued its Order granting preliminary approval to the Settlement, appointing Plaintiffs as Class Representatives and Plaintiffs' counsel as Class Counsel, and setting an administration and hearing schedule leading to the final approval hearing on **January 14, 2019**. (ECF No. 38). Plaintiffs then filed their Fees and Costs Motion on **November 26, 2018**. (ECF No. 40 *et seq.*).

### B.   Investigation and Mediation

Counsel also completed informal and formal discovery and were in possession of the documents and data necessary for estimating liability exposure at mediation on **April 9, 2018** with well-respected wage and hour mediator, Gig Kyriacou, Esq. in Los Angeles, California. (Yeremian Decl., ¶¶ 15-16; Yeremian Fees and Costs Decl., ECF No. 40-2, ¶¶ 18-27). After a full day of substantial negotiations, the parties were able to reach a settlement in principle and entered into a tentative agreement, which formed the basis for the Settlement that followed and is now before the Court for final approval. (*Id*. at ¶ 28). At all times, the parties' settlement negotiations have been non-collusive, adversarial, and at arm's length (*Id*. at ¶ 28, Exhibit A, Settlement Agreement, ¶ 13.7; Yeremian Decl., ¶ 15), while recognizing the uncertainty, risk, expense, and delay attendant to continuing the action through trial and any appeals. (*Id*. at Settlement, ¶¶ 1.4, 1.9, 13.8).

The Court further approved the proposed Class Notice and found that the procedure set forth in the Settlement Agreement for providing notice to the Class would provide the best notice practicable, satisfy the notice requirements of Rule 23(e), and adequately advised Class Members of their rights under the Settlement, and therefore met the requirements of due process. As a result, the Court ordered that the Class Notice be mailed by the Claims Administrator to all Class Members. The Court also ordered the filing of the Fees and Costs Motion, and set the hearing on both the fees and costs motion and the present motion for final approval for **January 19, 2019**. (ECF No. 38).

### C.   The Notice and Opt-Out Process

The details of the Settlement terms are addressed by Class counsel. (*See* Yeremian Decl., ¶ 21; *also* Yeremian Decl. in support of the Fees and Costs Motion, at ECF No. 40-2, ¶¶ 36-63). Class Counsel's original Declaration in support of the Motion for Preliminary Approval also addresses in detail the potential estimated liability exposure for each of Plaintiffs' main claims against Defendants as to the

5

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' UNOPPOSED
MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

California Class and Illinois Class and FLSA Collective, along with the methodology for arriving at the estimates and Defendant's responsive arguments in opposition to the claims. (Yeremian Decl., at ECF No. 32-2, ¶¶ 29-48; Yeremian Fees and Costs Decl., ECF 40-2, ¶¶ 30-35). The Court has preliminarily approved the Settlement after reviewing Plaintiffs' methodology and potential estimated liability calculations. (*Id.*; *see* ECF No. 38).

In addition to the Declaration provided in support of the Fees and Costs motion (ECF No. 40-11), the Settlement Administrator has provided a Declaration in support of the present Motion for Final Approval addressing the procedures followed for compiling the Class List and sending the Class Notice to the members of the Classes and Collective. (*See* Mills Decl., ¶¶ 4-12). Consistent with the Court's Order and the Settlement Agreement, the Claims Administrator was provided with a Class list including 3,314 names and then, after processing the list through an NCOA address check, mailed the Class Notice to these Class members on **October 11, 2018**. (Mills Decl., ¶¶ 7-10). A website was also created where Class Members could obtain information, and a dedicated mailing address and toll free number for this action were established. (*Id.* at ¶¶ 4-6). Through these address trace efforts, the Settlement Administrator was able to locate a current address for the vast majority of the Class Members, and after performing multiple address traces and locating more current addresses for hundreds of employees, presently only 78 Notice Packets remain undeliverable. (Mills Decl., ¶ 11).  For returned mailings, they were researched and re-mailed, and in the end, approximately 11 additional class members self-identified and were added to the numbers and sent a notice, bringing the total Class number to 3,324. (*Id.* at ¶¶ 16-18).

The last day to request exclusion from the Settlement was **December 10, 2018**. (Mills Decl., ¶¶ 10-14). Thus far, the Administrator has only received one (1) request for exclusion by an Illinois class member. (*Id.* at ¶ 13-15). Therefore, the participation rate for this Settlement is 99.97% (3,324 / 3,325). The Notice,

1   previously approved by this Court (see concurrently filed Yeremian Decl., Exhibit

2   A, Settlement, Exhibit A thereto; *see also* Mills Decl., Exhibit A), also clearly

3   apprised Class Members of their right to object to the Settlement and the method for

4   doing so. The deadline for objecting was **December 10, 2018**, and to date, no

5   member of the Class or Collective has objected to the Settlement. (Mills Decl., ¶¶

6   13-16). *Compare, Grant v. Bethlehem Steel Corp.*, 823 F.2d 20, 24 (2d Cir. 1987)

7   (approving class settlement where 45 of the 126 class members (approximately

8   36%) expressed opposition to the settlement); *Boyd v. Bechtel Corp.*, 485 F. Supp.

9   610, 624 (N.D. Cal. 1979) (approved despite approximately 16% of class having

10   filed opposition).

11         The notice and claims process was successful and complied with

12   constitutional due process. *See, Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812-

13   13 (1985) (holding that "a fully descriptive notice [that] is sent [by] first-class mail

14   to each class member, with an explanation of the right to 'opt out,' satisfies due

15   process"); *Grunin v. International House of Pancakes*, 513 F.2d 114, 121 (8th Cir.

16   1975) (holding that "individualized notice by mail to the last known address [is] the

17   'best notice practicable' in a class action contest"), *cert. denied*, 423 U.S. 864, 96 S.

18   Ct. 124, 46 L. Ed. 2d 93 (1975), *citing Eisen v. Carlisle & Jacquelin*, 417 U.S. 156,

19   174-77 (1974).

20   **III.   LEGAL AUTHORITY FOR FINAL APPROVAL**

21         **A.    The Standard of Review**

22         Under Rule 23(e) of the Federal Rules of Civil Procedure, "A class action

23   shall not be dismissed or compromised without the approval of the court, and notice

24   of the proposed dismissal or compromise shall be given to all members of the

25   class . . ." In deciding whether to approve a proposed settlement, the Ninth Circuit

26   has a "strong judicial policy that favors settlements, particularly where complex

27   class action litigation is concerned." *See Linney v. Cellular Alaska Partnership*, 151

28   F.3d 1234, 1238 (9th Cir. 1998); *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268,

7

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' UNOPPOSED
MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

1   1276 (9th Cir. 1992), *cert. denied*, 506 U.S. 953 (1992). Therefore, in making its
2   assessment pursuant to Rule 23(e), the Court's evaluation of what is otherwise "a
3   private consensual agreement negotiated between the parties to a lawsuit must be
4   limited to the extent necessary to reach a reasoned judgment that the agreement is
5   not the product of fraud or overreaching by, or collusion between, the negotiating
6   parties, and that the settlement, taken as a whole, is fair, reasonable, and adequate to
7   all concerned." *Officers For Justice v. Civil Serv. Comm.*, 688 F.2d 615, 625 (9th
8   Cir. 1982), *cert. denied*, 459 U.S. 1217 (1983); *see also In re Mego Fin. Corp. Sec.*
9   *Litig.*, 213 F.3d 454, 458 (9th Cir. 2000); *Hanlon v. Chrysler Corp.*, 150 F.3d 1011,
10  1027 (9th Cir. 1998).

11      A settlement hearing is "not to be turned into a trial or rehearsal for trial on
12  the merits," nor should the proposed settlement "be judged against a hypothetical or
13  speculative measure of what might have been achieved by the negotiators." *Officers*
14  *for Justice*, 688 F.2d at 625 (emphasis in original). To the contrary, the involvement
15  of experienced class action counsel and the fact that the settlement agreement was
16  reached in arms' length negotiations, after relevant discovery had taken place, create
17  a presumption that the agreement is fair. *See, Ellis v. Naval Air Rework Facility*, 87
18  F.R.D. 15, 18 (N.D. Cal. 1980), *aff'd*, 661 F.2d 939 (9th Cir. 1981).

19      As explained above, the settlement was reached after vigorous litigation by
20  experienced counsel on both sides, and then only after extensive investigation,
21  informal discovery, complaint amendment, mediation with an experienced and
22  respected wage and hour mediator, and months of protracted and extensive arms-
23  length negotiations regarding the exact terms and conditions of the settlement and
24  notice. (*See* Yeremian Fees and Costs Motion Decl., at ECF No. 40-2, ¶¶ 18-27).
25  Indeed, the final terms of the parties' Settlement Agreement took months to resolve
26  in order to ensure that the interests of the California Class and the Illinois Class and
27  FLSA Collective were adequately protected in the settlement. Under these
28  circumstances, the settlement should be afforded a presumption of fairness.

## B.   Relevant Ninth Circuit Considerations Favor Settlement Approval

A court can approve a class action settlement that binds class members "only after a hearing and on finding that it is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). A presumption of fairness exists where: (1) the settlement is reached through arms-length bargaining; (2) investigation and discovery are sufficient to allow counsel and the Court to act intelligently; (3) counsel is experienced in similar litigation; and (4) the percentage of objections is small.  Newberg & Conte, *Newberg On Class Actions* (3d ed. 1992), § 11.41, pp. 11-91.

The Ninth Circuit has explained that courts should consider "some or all" of the following factors in determining whether a proposed settlement is fair, reasonable, and adequate:  (1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement. *Churchill Village v. General Electric*, 361 F.3d 566, 575-576 (9th Cir. 2004), *cert. denied*, 543 U.S. 818 (2004), citing *Hanlon*, 150 F.3d at 1026; *see also Linney*, 151 F.3d at 1242. One factor alone may prove determinative. *Id.* Ultimately, "[s]trong judicial policy favors settlements." *Churchill Vill., LLC v. Seattle,* 361 F.3d 566, 576 (9th Cir. 2004) (omission and quotation marks omitted*) (*quoting *Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d at 576).

The relevant *Churchill* factors weigh in favor of final approval. The Court has not issued any orders discussing the strength of Plaintiff's case, except to the extent the preliminary approval documents touched on it. But the risk, expense, complexity, and likely duration of further litigation, as well as the risk of maintaining class action status throughout the trial, are high here. Defendants would have contested class certification by arguing that individualized issues predominate

9

and by contesting typicality. This is a complex class action case and establishing liability and proving the amount of damages sustained would be risky.

There has been significant discovery in this case, including information regarding the number of class members, timekeeping, payroll data, Defendants' policies, calculations of hours worked, meal periods for non-exempt employees, and wage statements. Counsel on both sides are experienced in wage and hour class actions. The settlement award is also objectively fair and reasonable. The settlement is non-reversionary, and 3,324 out of 3,325 potential class members will be paid under the Settlement terms given there is only one exclusion. The parties reached the settlement after conducting discovery and mediating with a respected mediator, evidencing a lack of collusion, and the parties' addressed any issues the Court had with the Class Notice prior to its sending. (*See*, Yeremian Suppl. Decl., at ECF No. 37, ¶¶ 3-9, Exhibits A-B).

## 1.     Strength of Plaintiffs' Case

In evaluating a settlement in this type of complex litigation, courts have long recognized that such litigation "is notably difficult and notoriously uncertain." *Lewis v. Newman*, 59 F.R.D. 525, 528 (S.D.N.Y. 1973) (footnote omitted.). Thus, compromise is particularly appropriate. *Nelson v. Bennett*, 662 F. Supp. 1324, 1334 (E.D. Cal. 1987). For a full discussion of the strengths and risks associated with Plaintiffs' claims, see Plaintiffs' Motion for Preliminary Approval and accompanying documents. (Yeremian Preliminary Approval Decl., ECF No. 32-2; Motion docs, ¶¶ 86-97; Memorandum, ECF No. 32-1, pages 16-19).

To succeed at trial, Plaintiffs would have to prevail on each and every element of their claims. There are significant legal uncertainties associated with unlawful policy claims. In particular, Plaintiffs contend that Trunk Club maintains an unlawful policy that failed to pay all employees for all hours worked, both under California law and the FLSA, and also under Illinois law. Unlawful policy and practice cases such as this one are a common basis upon which Federal courts

10

1  frequently certify wage and hour claims. However there is a risk that the policy and

2  practice could be interpreted as being lawful, in which case there would be no

3  recovery, or even that there could be a finding that the time was *de minimis*. The

4  primary wage claims for off-the-clock therefore carried their own unique risks.

5      In sum, while Plaintiffs believe they have arguments and evidence to counter

6  each one of Defendant's positions, there is no guarantee that the Court or jury would

7  agree. *See West Virginia Chas. Pfizer & Co.*, 314 F. Supp. 710, 743-44 (S.D.N.Y.

8  1970) ("it is known from past experience that no matter how confident one may be

9  of the outcome of litigation, such confidence is often misplaced."), *aff'd*, 440 F.2d

10 1079 (2d Cir.), cert. denied, 404 U.S. 871 (1971).

11          **2.      The Amount Offered In Settlement**

12      The Total Settlement Amount is $1,750,000.00. Pursuant to the terms of the

13 Settlement, Class Members will receive a proportionate share of the Net Settlement

14 amount, estimated to be $1,177,500.00, of which $294,375.00 is allocated to

15 California Class Members and $883,125.00 is allocated to the FLSA and Illinois

16 Class Members. (Mills Decl., ¶¶ 20-21). After incorporating the additional eleven

17 (11) Class Members and the exclusion, there are 3,324 Settlement Class Members,

18 of which 334 are California Class Members, 1,978 are Illinois Class Members and

19 1,012 are FLSA Class Members. (*Id*. at ¶ 22). The average Settlement Payment for

20 California Class Members is estimated to be $886.98, while the lowest estimated

21 payment is $2.07 and the highest estimated payment for a California Class Member

22 is $4,489.65. (*Id*. at ¶ 23). The average Settlement Payment for the FLSA/Illinois

23 Class Members is estimated to be $265.60, while the lowest estimated payment is

24 $0.49 and the highest estimated payment for an FLSA/Illinois Class Member is

25 $2,014.98. (*Id*. at ¶ 24).

26      Plaintiffs estimated **$1,039,297** in potential liability exposure to Defendant on

27 their main California Class Claims. Out of the Net Distribution Fund, the parties

28 allocated **$288,750** to payments to the California Class Members. This represents

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' UNOPPOSED
MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

**27.78%** of the total maximum potential liability exposure calculated for these claims, and **16.5%** of the Total Settlement Amount, which Class Counsel submits is an excellent result for the California Class Members. (Yeremian Decl., ¶ 18; Yeremian Fees and Costs Decl., at ECF No. 40-2, ¶ 31; *see also generally*, ECF No. 32-2, ¶¶ 29-48).

For the FLSA Collective and Illinois Class combined, and using a similar violation rate to that of the California Class Members, Plaintiffs estimated **$2,799,243.13** in total potential liability exposure. The parties through the mediator determined to allocate **$883,125** to the "Net Non-California Distribution Fund" for payments to the Illinois Settlement Class Members and the FLSA Settlement Collective Members. This allocation represents approximately **31.55%** of the potential maximum liability exposure Defendant faced on the Illinois Class Claims and the FLSA Collective Claims, and **50.46%** of the Total Settlement Amount. (Yeremian Decl., ¶ 19; Yeremian Fees and Costs Decl., at ECF No. 40-2, ¶ 32; *see also generally*, ECF No. 32-2, ¶¶ 29-48).

Plaintiffs therefore determined that the Net Distribution Fund, if all requested allocations from the Total Settlement Amount were approved, totaled approximately **$1,177,500**. From the total estimated liability exposure Class Counsel calculated for all claims of **$3,838,530.63**, the total Net Distribution Fund to be paid to the California Class Members, Illinois Class Members and FLSA Collective Members was approximately **30.67%** of the potential liability exposure Defendant faced on the majority of Plaintiffs' claims. (Yeremian Decl., ¶ 20; Yeremian Fees and Costs Decl., at ECF No. 40-2, ¶ 33; *see also generally*, ECF No. 32-2, ¶¶ 29-48).

Plaintiffs submit the Settlement value of $1.75 million, in light of the above numbers, is fair and reasonable in light of the risk of no recovery following protracted litigation, Defendant's policies and record of compliance, and for all the reasons addressed in this Motion and the prior Preliminary Approval and Fees and Costs Motions and supporting documents. Based on the numerous risks and

unresolved questions of law associated with continuing to litigate this case, it is in the best interests of the Settlement Classes and Collective to receive a certain and substantial award. Courts in the Ninth Circuit have observed: "simply because a settlement may amount to only a fraction of the potential recovery does not in itself render it unfair or inadequate. Compromise is the very nature of settlement." *Boyd v. Bechtel Corp.*, 485 F. Supp. 610, 624 (N.D. Cal. 1979); *see also Nat'l Rural Telecomm. Coop. v. DirecTV, Inc.,* 221 F.R.D. 523, 527 (C.D. Cal. 2004) (it is "well settled law that a proposed settlement may be acceptable even though it amounts to only a fraction of the potential recovery"); *see e.g*., *In re Omnivision Tech., Inc.,* 2008 WL 123936 (N.D. Cal. 2008) ($13.75 million settlement approved despite over $151.8 million estimate of damages through trial). The settlement here is significantly more than a "fraction" and in fact provides substantial recovery when considering the associated risk factors involved in the case. The Settlement amount is fair and reasonable in light of the uncertainties associated with continued litigation.

**3.    Risk, Expense, Complexity, and Likely Duration of Litigation**

If there was no settlement and Plaintiffs proceeded through Class certification, expert discovery and trial preparation would be expensive and complex. While certainly attainable, victory in such a complex trial is hardly assured, especially when addressing policies and procedures that were applied in both California and nationwide. Even if Plaintiff prevailed in establishing liability, additional risks would remain in establishing the amount of damages sustained by the class. *See In re Veritas Software Corp. Sec. Litig.* 2005 U.S. Dist. LEXIS 30880 at *14-15 (N.D. Cal. Nov. 15, 2005) (challenges in proving damages and other litigation risks supported approval of settlement).

While Defendant has agreed to settle the action, if this case were to proceed, Defendant would continue to assert a vigorous defense on liability and class certification. Therefore, while Plaintiffs believe the claims are meritorious and the

Class would be able to establish liability, Plaintiffs recognize the uncertainties of trial and the risks inherent in establishing liability in a complex case of this nature.

By approving the Settlement, the Court can guarantee recovery for 99.97% of Settlement Class members without having the Class face the risk of trial and a possible appeal. If this case were to proceed to trial, the Parties would have to expend hundreds, if not thousands, of additional hours in attorney time, and spend much more in costs. Expenses incurred for a trial would severely deplete any eventual recovery. Further, post-trial motions and appeals could force class members to wait many more years for any recovery, further reducing its value. Consequently, resolution of this case before trial will benefit the Settlement Class.

Consistent with the foregoing, it would be grossly inefficient for such a large class of current and former employees to bring individual actions to recover from Trunk Club for its alleged labor law violations. Moreover, the potential recovery to each individual class member is likely not high enough to provide them with the incentive to sue individually. By granting final approval of the Settlement, the Court can eliminate all risks and provide participating Settlement Class members with a certain recovery.

### 4. Risk of Maintaining Class Action through Trial and Appeal

Maintaining a class action is an expensive and risky enterprise. In addition to the thousands of hours of time and money spent, with no hope of remuneration until and unless there is either a settlement or a judgment, there is also the ever-present possibility that any victory attained by a plaintiff can be overturned. *See, e.g., Fecht v. Northern Telecom Ltd. (In re Northern Telecom Ltd. Sec. Litig.)*, 116 F. Supp. 2d 446 (S.D.N.Y. 2000) (summary judgment granted after seven years of litigation); *Robbins v. Koger Props, Inc.*, 116 F.3d 1441 (11th Cir. 1997) (jury verdict of $81 million for plaintiffs against an accounting firm reversed on appeal on loss causation ground and judgment entered for defendant); *Eisenstadt v. Centel Corp.*, 113 F.3d 738 (7th Cir. 1997) (affirming the lower court's granting of

summary judgment in favor of defendants); *In re Apple Computer Sec. Litig.*, 1991 U.S. Dist. LEXIS 15608 (N.D. Cal. Sept. 6, 1991) (class won jury verdict against two individual defendants, but district court vacated judgment on motion for judgment notwithstanding the verdict); *Backman v. Polaroid Corp.*, 910 F.2d 10 (1st Cir. 1990) (where the class won a substantial jury verdict and a motion for judgment notwithstanding the verdict was denied; however, on appeal, the judgment was reversed and the case dismissed – after 11 years of litigation).

Although the Class has been certified at this time for purposes of settlement, there is no assurance that it would continue to remain certified. "A district court has a duty to assure that a class once certified continues to be certifiable under Fed. R. Civ. P. 23(a)." *Petrovic v. Amoco Oil Co.*, 200 F.3d 1140, 1145 (8th Cir. 1999), citing *Hervey v. City of Little Rock*, 787 F.2d 1223, 1227 (8th Cir. 1986). Should this Court not finally approve the Settlement, Plaintiffs would need to prevail upon their motion for class certification, which Defendant would vigorously oppose. Additionally, the Supreme Court's decision in *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541 (2011) substantially undermines Plaintiff's ability to certify a class action. Plaintiffs must affirmatively demonstrate both that common questions of law and fact exist and that the methodology utilized for showing harm on a class-wide basis actually works. Defendants believe *Dukes* forecloses "trials by formula," finding that this methodology violates its due process rights because it does not allow defendants to challenge and rebut any claims inevitably resulting in payment to persons not damaged, and it poses issues. Federal courts have cited *Dukes* to deny and decertify cases.

Settlement at this time will avoid this uncertainty and additional substantial costs, such as those that have already been incurred by both Parties, as well as avoid the delay and risks that would be presented by the further prosecution of this litigation. The instant settlement eliminates these risks.

### 5.    Extent of Discovery Completed and Stage of the Proceedings

The extent of evidentiary review completed and the stage of the proceedings bear on whether settlement should be approved. Courts look to whether investigation of the facts and evidence is sufficient to allow counsel and the court to act intelligently. *In re Warner Communications Sec. Litig.*, 618 F. Supp. 735, 741 (S.D.N.Y 1985), *aff'd* (2d Cir. 1986).

The extensive discovery and investigation clearly allowed both Parties to assess their relative positions and come to the conclusion, based on the analysis of the information, that settlement at this stage of the litigation was proper and that the settlement terms and amount were fair, adequate and reasonable. Counsel also completed informal and formal discovery and were in possession of the documents and data necessary for estimating liability exposure at mediation on **April 9, 2018** with well-respected wage and hour mediator, Gig Kyriacou, Esq. in Los Angeles, California. (Yeremian Decl., ¶ 15; Yeremian Fees and Costs Decl., ECF No. 40-2, ¶¶ 18-27). After a full day of substantial negotiations, the parties were able to reach a settlement in principle and entered into a tentative agreement, which formed the basis for the Settlement that followed and is now before the Court. (*Id.* at ¶ 28).

By the time the settlement was reached, the action had proceeded to the point where both Plaintiffs and Defendant had "a clear view of the strengths and weaknesses of their cases." *In re Warner Communications Sec. Litig.*, 618 F. Supp. at 745. At the time the Parties mediated the action, Plaintiffs had been litigating the action for many months and had conducted extensive informal investigation and retained experts to review data and employment practices. Accordingly, the stage of the proceedings, and the amount of the discovery completed, strongly favor approval of the Settlement. *See Chatelain v. Prudential-Bache Sec.*, 805 F. Supp. 209, 213-14 (S.D.N.Y. 1992).

### 6.      Experience and Views of Counsel

The Settlement is the product of arms-length negotiations conducted by capable counsel who are experienced in class action litigation, with the assistance of an experienced wage and hour class action mediator. (*See* Yeremian Fees and Costs Decl., ECF No. 40-2, ¶¶ 27-29). Trunk Club is represented by very skilled and capable counsel from a top-tier law firm. (Yeremian Decl., ¶ 6).

Having conducted extensive informal investigation and discovery in this case and having assessed the risks of continued litigation, it is the view of Class Counsel that the settlement appropriately reflects the relative strengths of the parties' respective claims and defenses, as well as the substantial risk presented in continuing the litigation. (*See, e.g.,* Yeremian Preliminary Approval Decl., ECF No. 32-2, ¶¶ 70-73, 93; Yeremian Fees and Costs Decl., ECF No. 40-2, ¶¶ 33, 73). Such recommendations should be given a presumption of reasonableness. *Boyd v. Bechtel Corp.*, 485 F. Supp. 610, 622 (N.D. Cal. 1979); *Fisher Bros. v. Cambridge-Lee Industries, Inc.*, 630 F. Supp. 482, 488 (E.D. Pa. 1985); *Ellis*, 87 F.R.D. at 18 (the view of the attorneys actively conducting the litigation, while not conclusive, "is entitled to considerable weight"). Moreover, "[c]ourts have consistently refused to substitute their business judgment for that of counsel, absent evidence of fraud or overreaching." *In re King Res. Co. Sec. Litig.*, 420 F. Supp. 610, 625 (D. Colo. 1976).

### 7.      Presence of a Governmental Participant

Pursuant to California Labor Code §§ 2698 - 2699.5, Plaintiff's counsel has notified the LWDA of the Settlement and the PAGA claim and payment. (Yeremian Decl., ¶ 6). Notice under CAFA was not required as Plaintiffs filed directly in Federal Court, but governmental agencies such as the LWDA will have the opportunity to weigh in on the proposed Settlement should they believe it unfair in any respect. This process will help insure that the interests of the Settlement Class are protected, and confirm the reasonableness of the Settlement.

### 8.     Reaction of the Settlement Class Members to the Settlement

"A favorable reception by the Class constitutes 'strong evidence' of the fairness of a proposed settlement and supports judicial approval." *In re PaineWebber Ltd. Pships. Litig.*, 171 F.R.D. 104, 126 (S.D.N.Y. 1997), *aff'd*, 117 F.3d 721 (2d Cir. 1997). Here, 99.97% of the Class have decided to participate in the Settlement, only one Class member opted out, and not a single class member objected to the settlement. (Mills Decl., ¶¶ 13-19). This demonstrates a "favorable reception" by class members to the settlement. In fact, "the absence of objectants [sic] may itself be taken as evidencing the fairness of a settlement." *Ross v. A.H. Robins*, 700 F. Supp. 682, 684 (S.D.N.Y. 1988); *see also In re Warner Communications Sec. Litig.*, 618 F. Supp. at 746 (noting that two objections to settlement was very low); *Milstein v. Huck*, 600 F. Supp. 254, 267 (E.D.N.Y. 1984) (explaining that the reaction of the class was "overwhelmingly favorable" because no objections to the settlement had been filed). Accordingly, this factor of the test is satisfied and supports final approval of the Settlement.

### 9.     Settlement Procedure

Another factor that may be considered by the Court is "the procedure by which the settlement was arrived at." *See In re Patriot Am. Hospitality, Inc. Sec. Litig. (Open Market Action)*, 2005 U.S. Dist. LEXIS 40995, *5 (N.D. Cal. 2005) ("To these factors, the court adds (9) the procedure by which the settlements were arrived at, see Manual for Complex Litigation (Second) § 30.44 (1985) . . . ."). As noted above and described in the declarations submitted with the Motion For Award of Fees, etc. and the Motion for Preliminary Approval, the Settlement was achieved only after protracted and complex arms-length negotiations by experienced counsel, and with the assistance of an experienced mediator. There is no doubt that the settlement process was "vigorously adversarial" and, therefore, favors approval of the final settlement. *See id.* at *8 (finding that "vigorously

1  adversarial" procedure for arriving at settlement "militates in favor of the

2  settlement").

3  **C.      Approval of Attorneys' Fees, Costs, Representative Enhancements**

4  Plaintiffs and Class Counsel have negotiated a Total Settlement Amount of

5  one million, seven hundred and fifty thousand dollars ($1,750,000.00) for

6  approximately 3,324 employee Class and Collective members in connection with

7  this non-reversionary Settlement. (Yeremian Fees and Costs Decl., ¶ 36, at ECF No.

8  40-2, Exhibit A, Settlement, ¶ 2.37). Plaintiff and Class Counsel requested through

9  their Fees and Costs Motion award of reasonable attorneys' fees and costs totalling

10 **$525,000.00**, which is 30% of the Total Settlement Amount, and an award of

11 **$7,500.00** to each Plaintiff as Class Representative Enhancements and Service

12 Awards for their dedicated efforts on behalf of the Class and Collective members

13 employed by Defendant in California and nationwide. (*See generally*, ECF No. 40-

14 1; *see also* Declarations of David Yeremian, Alvin B. Lindsay, Emil Davytan,

15 Amita Gupta, and Darius Rowser, ECF Nos. 40-2 through 40-13). Plaintiffs and

16 Class Counsel respectfully request that the Court grant fees and costs and the

17 enhancement awards as detailed in the Fees and Costs Motion documents, filed

18 **November 26, 2018**. (Yeremian Decl., ¶ 27).

19 As reported in the Fees and Costs Motion documents, Class counsel incurred

20 approximately **660.9** attorney hours through **November 26, 2018**, amounting to

21 **$371,231.50** in attorneys' fees, and have incurred further hours and reasonable costs

22 through final approval. (Yeremian Decl., ¶ 29; Yeremian Fees and Costs Decl., ECF

23 No. 40-2, ¶¶ 76-81, Exhibit C). Therefore, at the time of filing the Fees and Costs

24 Motion, only a modest lodestar multiplier of **1.41** was required in awarding the

25 requested $525,000.00 (which is 30% of the total Settlement amount) for attorneys'

26 fees and costs. (*Id*.). David Yeremian estimates he has invested an additional 5.7

27 hours since that time communicating with Class Members and preparing for the

28 final approval filing, and will incur approximately eight (8) more to attend

19

preliminary approval and additional time post final approval, for a total of 13.7 hours at $695 per hour, or $9,521.50. (Yeremian Decl., ¶ 30). Alvin Lindsay has incurred an additional 10.6 hours in preparing the final approval motion documents and will incur an estimated 10.2 hours in taking this Settlement through distribution after final approval. This is in increase of 20.8 hours, which at an hourly rate of $650/hr amounts to an additional $13,520.00 in fees. (Yeremian Decl., ¶ 31).  The total lodestar through final approval is thus estimated for Class Counsel at **695.4** attorney hours (660.9 + 34.5 hrs**)** amounting to **$394,273.00** ($371,231.50 + $23,041.50) in attorneys' fees. (*Id*. at ¶ 32).

Through the filing of the Fees and Costs Motion, Class counsel had incurred approximately $9,200.00 in reasonable litigation costs. (Yeremian Fees and Costs Decl., ECF No. 40-2, ¶ 87, Exhibit D). Class Counsel provides an updated invoice detailing costs of **$9,362.89** through present. (Yeremian Decl., ¶ 33, Exhibit A).

When adding the additional costs and attorneys' fees and hours incurred, the total expenses and fees incurred by Class Counsel is approximately **$403,635.89**. This **reduces** the requested **multiplier from 1.41 to 1.3**. (Yeremian Decl., ¶ 34). When cross-checked with the percentage of the common fund, the requested attorney fees and costs award representing 30% of the Total Settlement Amount represents a slight upward departure from the federal 25% benchmark, but this is reasonable and fair compensation for undertaking such complex, risky and time-consuming litigation on a contingency basis. Plaintiffs and Counsel therefore respectfully request approval of the fees and costs as requested and preliminarily approved.

Additionally, for the reasons set forth in the Fees and Cost Motion and Gupta and Rowser and Yeremian Declarations in support thereof, Plaintiffs request approval of the class representative enhancement and incentive awards of **$7,500.00** to each of them. (*See* ECF Nos. 40-1, 40-2, 40-12, 40-13; Yeremian Decl., ¶ 26).

### D.     <u>Final Certification for Settlement Purposes Is Appropriate</u>

For the reasons set forth in greater detail in Plaintiffs' previously filed Motion for Preliminary Approval (*see* ECF Nos. 32, 37) and Fees and Costs Motion (ECF No. 40 *et seq.*), Plaintiffs respectfully submit that the proposed putative class satisfies the requirements of Fed. Civ. P. 23(b)(3) for purposes of settlement. The Court has preliminarily certified the putative class in its Preliminary Approval Order. (*See* ECF. No. 38). Accordingly, Plaintiffs will not repeat that discussion here. Final certification for settlement purposes is appropriate to allow the Settlement Class Members to partake of the benefits of the Settlement, and should be granted.

### E.     <u>Settlement Administration Costs Should Be Approved</u>

The Court approved Settlement Administrator was responsible for mailing the Notice packets to the Class members, processing notice packets, responding to Class member inquiries, calculating the settlement payments, transmitting individual settlement payments to participating Class Members, providing status reports of the claims administration to all counsel on a regular basis, calculating and withholding the Class Members' share of taxes, paying those withholdings to the appropriate government agencies, distributing the settlement checks, and performing such other duties as the parties may direct. (*See* Mills Decl., ¶¶ 3-12). The fees and costs incurred by Rust Consulting, Inc. are $25,000.00.  (*Id*. at ¶ 25). An amount up to $25,000.00 was agreed to by the parties and preliminarily approved by the Court. (ECF No. 38). Plaintiffs therefore request final approval of the Settlement Administration fees and costs of $25,000.00.

///

///

///

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

**IV.    CONCLUSION**

For the reasons set forth herein, and in the Motion for Preliminary Approval and Motion for Attorneys' Fees and Costs and Class Representative Enhancements, Plaintiffs respectfully request that this Court grant final approval to the proposed Settlement and enter the proposed Judgment and Order in the form submitted herewith.

DATED: December 17, 2018          DAVID YEREMIAN & ASSOCIATES, INC.

By:*/s/ David Yeremian*
                                         David Yeremian
                                         Alvin B. Lindsay
                                         Attorneys for Plaintiffs
                                         and the Settlement Classes and
                                         Collective